# THE STATE v. DONAHOE.

**Homicide:** SELF-DEFENSE INSTRUCTIONS: BURDEN OF PROOF: APPARENT DANGER.  On the trial of this case,—an indictment for murder,—there was evidence that the deceased was a quarrelsome, vindictive and dangerous man, and that defendant was a quiet, peaceable and law-abiding citizen; that their lands lay side by side, and that there had been litigation and ill-feeling between them, growing out of the refusal of decedent to erect his share of the partition fence, and his distraint of defendant's cattle when found upon his land ; that decedent had made threats to take the life of defendant, which threats had been communicated to defendant; that, after defendant had been upon decedent's land in pursuit of his cattle, he was followed by decedent upon the land of defendant, and, though commanded by defendant to halt, he advanced upon defendant with something that looked like a revolver in his right hand, which he held as if about to shoot, and that it was then that defendant fired the shot of which decedent died.  *Held* that the case was one which called for a clear and plain statement to the jury of the law pertaining to self-defense, and that the instructions given by the court in regard thereto (see opinion) were prejudicially faulty, because (1) they omitted to charge that the burden was on the state to show that the killing was not excusable by reason of self-defense, but rather led to the inference that it was incumbent on the defendant to show affirmatively that he was excusable for that reason (compare *State v. Cross*, 68 Iowa, 180, and *State v. Dillon*, 74 Iowa, 653); and because (2) the thought that the accused has the right to view the situation as an ordinarily prudent man, and act upon the apparent. rather than the real, danger to which he is exposed, was not set forth as it should be.

*Appeal from Cass District Court.*—HON. GEORGE CARSON, Judge.

FILED, OCTOBER 15, 1889.

THE defendant was indicted for the murder of one Lawrence Dolan.  Upon a trial he was convicted of manslaughter, and sentenced to imprisonment in the state penitentiary for seven years.  He appeals.

*J. C. Bryant, E. Willard* and *L. L. De Lano*, for appellant.

*John W. Scott*, County Attorney, and *J. Y. Stone*, Attorney General, for the State.

ROTHROCK, J.— I. There is no dispute that Lawrence Dolan is dead, and that he came to his death by a gunshot wound inflicted by the defendant. The only question which the jury in the court below was required to determine was whether the homicide was excusable on the ground of self-defense. It appears from the undisputed facts in the case that Dolan was the owner of a farm of two hundred and forty acres in Cass county, upon which he, with his family, resided. The farm consisted of three contiguous eighty-acre tracts, the length of each eighty being east and west. The house in which deceased and his family resided was near the south line of the farm. One Barrett owned an eighty-acre farm adjoining the Dolan farm on the north. Barrett and Dolan had differences in regard to the maintenance of a partition fence on a line between the farms. Their contentions led to litigation, which in one instance was carried to this court. See *Barrett v. Dolan*, 71 Iowa, 94. Barrett leased his farm to the defendant, and the trouble in regard to the line fence continued between the deceased and the defendant. Under the decision of this court, the deceased was under obligations to maintain his part of a partition fence. He not only failed and refused to do so, but removed part of the fence already there. Donahoe, the defendant, used the greater part of the eighty-acre farm for a cattle pasture, and in the year 1887 the decedent had his land adjoining the Barrett farm in corn. When Donahoe, the defendant, turned his cattle in the pasture they crossed the line and went into Dolan's corn. Dolan distrained them, and the defendant brought an action of replevin before a justice of the peace, and a trial was had, and Dolan was defeated. As was perfectly natural, there was enmity between the parties. A few days after the trial the defendant's cattle crossed over the line, and the defendant and his hired man, named Buchanan, started after them on horseback,

each one of them taking a gun. They went over the line, and down on Dolan's land by a traveled track which runs through his farm north and south. They did not see any cattle, and were informed by one of Dolan's hired men that the cattle had gone south. Donahoe and Buchanan turned and rode back. Dolan and his son saw the men on horseback, and pursued or followed them up to and over the line between the farms. After crossing the line, Donahoe dismounted from his horse, and, as the deceased approached the line, Donahoe warned him to stop. The deceased crossed over the line, and while rapidly advancing towards Donahoe, and at a distance of some eighty feet, Donahoe fired his gun, the charge of which struck Dolan, from which he almost instantly died.

If the above were all the facts attending the tragedy, the defendant would undoubtedly be guilty of a criminal homicide. But there was evidence in the case which entitled the defendant to have presented to the jury the law upon excusable homicide by reason of self-defense. A large number of witnesses for the defense testified that the reputation of deceased was that of a quarrelsome, vindictive and dangerous man, and that the defendant was a peaceable, quiet and unoffensive citizen. Indeed, there is no conflict in the evidence upon these questions of character or reputation, and the evidence further shows that deceased had frequently made threats against the defendant. The hired man of defendant, who was with him when the tragedy occurred, and who was jointly indicted with the defendant, testified that a few days before the killing he went to Dolan's home at the instance of defendant, and asked if he would fix his fence, and that Dolan made no promise to do so, but said that if Donahoe or any of his agents came into his place they must come armed, and prepare to look out for themselves. He also made threats to take the life of Donahoe to others. All these threats and warnings were communicated to Donahoe, and it was in evidence that when Donahoe started to go to Dolan's field for his cattle he stated that he would

take "his gun to defend himself if he had to; that he was afraid to go without it." And the hired man, Buchanan, testified that as Dolan approached the line Donahoe warned him not to cross it, and that Dolan, who was advancing rapidly, did not halt, and that as he advanced he raised his right arm, and pointed what appeared to be a revolver at Donahoe, and that he held this revolver in that position when Donahoe fired his gun. The son of Dolan was with him, and he testified that his father had no revolver, and made no menace as though he was about to shoot. There was great conflict in the evidence as to whether Dolan owned or carried a revolver. The preponderance of evidence is probably to the effect that he owned a weapon of that kind, and that at times, at least, he carried it in a hip pocket. No revolver was found upon his person after he was shot, and if he had one at that time it was removed by his son after the shooting.

We have stated the above facts, not for the purpose of commenting upon the effect or the weight of the evidence. Those are considerations for the jury. But our purpose is to show that the facts in the case demanded a clear and plain statement to the jury of the law pertaining to self-defense, and for the further purpose of considering an objection to certain evidence introduced by the state. Many objections were made by the defendant to the introduction of evidence on the part of the state, and to the exclusion of evidence offered by the defendant. Some of these objections are so manifestly without merit that we must decline to discuss them. Other objections are not well taken in point of fact, the court having practically admitted or rejected the evidence when presented in another form. One ruling of the court, however, demands attention. Mr. Walker was a witness for the state. He was permitted, against the defendant's objection, to testify that he was the attorney for Dolan, and conducted his side of the replevin case before the justice of the peace above referred to; that on the day after the trial he told deceased that "he [deceased] could not afford to go on

with the law suits in that shape," and that he and Donahoe ought to settle; and that Dolan said he would make the attempt to do it, but that he did not believe that Donahoe would have anything to do with it. We can conceive of no ground upon which the testimony was admissible. It was introduced in rebuttal. It was surely not competent as rebutting the evidence of deceased's reputation as a quarrelsome, vindictive and dangerous man. If introduced for the purpose of showing that the defendant was contentious, and not disposed to settle, it was the merest hearsay; and if for the purpose of rebutting the evidence of defendant's good character as a law-abiding and peaceable citizen, it was plainly inadmissible. It had no connection with the body of the crime charged, and we fail to find any reason, good or bad, in the argument of counsel for the state, by which it is sought to sustain this ruling of the court. We are satisfied the ruling was erroneous, and yet we have not thought it necessary to consider whether the evidence is of enough importance in the case to demand a reversal, because we have concluded that the judgment must be reversed on other grounds, which we will now proceed to consider.

II. As we have said, it was the defendant's right to have the question of self-defense plainly defined in the instructions of the court to the jury. The killing was admitted, but the defendant claimed that it was done in self-defense. The court instructed the jury, in part, as follows: "(10) Before the killing of a human being will be justified in law it must be made to appear that the person accused of such killing, while in the pursuit of his own business, is assaulted under such circumstances as indicates a purpose on the part of the assailant to take the life of the person assailed, or to do him some great bodily injury. But before the person assailed will be justified in taking the life of his assailant it is the duty of the person assaulted or attacked to retire to what is termed in law a 'wall' or 'ditch' before he is justified in taking the life of his assailant. But when the assault is made with a dangerous or deadly weapon, and in so fierce a manner as

not to allow the party thus assaulted to retire without great danger to his life, or of great bodily injury, in such case he is not required to retreat, if such assault shall appear to a reasonably prudent man that such danger is imminent, and cannot safely be avoided by retreating. (11) But when the attack is not of that character that would indicate to a reasonable, prudent man that the assailant had the ability of inflicting upon him such mortal or serious bodily injury, as an assault without a weapon of any kind by a quarrelsome and violent man, then there is no reason for the belief by the person attacked that his person was in danger of death, or great bodily harm, but that an ordinary battery was all that was intended by the assailant, and all that he had reason to fear from the acts of his assailant, and in such event the party assailed has no right to take the life of the assailant. Nor will a trespass upon another justify the use of deadly weapons to expel the trespasser." These instructions entirely omit the important requirement that it is incumbent on the state to prove the guilt of the defendant beyond a reasonable doubt. The reading of them rather indicates to the mind that the burden is on the defendant to show that he is excusable by reason of self-defense. And the instructions are not clear in other respects. The first clause or sentence of the tenth instruction requires the assault which will excuse a homicide to be such as "indicates a purpose on the part of the assailant to take the life of the person assailed, or to do him some great bodily injury." The thought that the accused has the right to view the situation as an ordinarily prudent man, and act upon the apparent, rather than the real, danger to which he is exposed, is not set forth as it should be. The evidence in the case, introduced by the state, demanded proper instructions upon this feature of the case; and the jury are not charged in any part of the instructions that the burden is on the state to show that the killing was not excusable by reason of self-defense. This was error. *State v. Cross*, 68 Iowa, 180; *State v. Dillon*, 74 Iowa, 653. Exceptions were taken

to other instructions, which we do not think it necessary to consider. We are not prepared to say they are erroneous, and for that reason express no opinion in relation to them. For the errors above pointed out the judgment will be                      REVERSED.