## STATE OF IOWA v. JOHN JACKSON, Appellant.

**Jurors:** QUALIFICATION: OATHS. A person otherwise competent as a juror may take the oath, regardless of his religious convictions, provided he regards it in the form administered as binding upon his conscience; and if taken without objection it will be assumed that he so regards it: So that even though a juror denied belief in a Supreme Being, future reward or punishment, or in the Scriptures, but took the usual oath, he was not disqualified by reason of his unbelief.

**Criminal law:** EVIDENCE: ADMISSION UPON MOTION: DISCRETION: PREJUDICE. The trial court is vested with a discretion in determining the question of diligence in procuring evidence offered upon the trial, but not submitted to the grand jury, which will not be disturbed except for an abuse of such discretion resulting in prejudice; and while an error in admitting evidence upon motion under the statute is not in all cases waived by failing to take a continuance, the failure to do so may be considered in determining the question of prejudice.

**Same:** EVIDENCE TAKEN UPON NOTICE. The examination of a witness whose evidence is taken upon notice need not be strictly confined to those matters specified in the notice.

**Same:** EVIDENCE: THREATS. Recent uncommunicated threats against

one charged with crime, where the plea of self-defense is interposed, are admissible for the purpose of showing who was the aggressor in the affray, but in the instant case the offered evidence is insufficient to show a threat.

**Same:** VIEW OF PREMISES: DISCRETION. Permission of the jury to view the premises where the crime with which a defendant is charged was committed, is wholly discretionary with the trial court.

**Same:** ARGUMENT: MISCONDUCT. Where the argument of counsel for the state was based upon what the testimony tended to show, there was no abuse of discretion of overruling a motion for new trial on the ground of misconduct.

**Same:** EVIDENCE: ADMISSIONS: INSTRUCTIONS. Verbal admissions should be received with great caution, because that kind of evidence is subject to imperfection and mistake; but when deliberately made and accurately proven are often entitled to much weight. The instruction in the instant case is held to state the rule correctly.

**Same:** SELF-DEFENSE: INSTRUCTION. A violent act in self-defense is justified, where the danger was actual and urgent to the comprehension of a reasonable person. The instruction as given by the court was a correct statement of the law.

**Same:** DUTY TO RETREAT. One assaulted may stand his ground only when it reasonably appears that he can not retreat in safety.

*Appeal from Monroe District Court.*—HON. F. M. HUNTER, JUDGE.

TUESDAY, OCTOBER 15, 1912.

DEFENDANT was indicted for the crime of murder in the first degree. Upon trial to a jury he was convicted of the crime charged and sentenced to the penitentiary for life. He appeals.—*Affirmed.*

*Jno. R. Price,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

DEEMER, J.—On the night of July 22, 1911, the defendant stabbed one Andrew Bleakey in the abdomen with a knife, which within five days resulted in death. The killing was admitted; but defendant claims that his act was in defense of his person. This issue went to the jury, and the finding was to the effect that the killing was felonious and not justifiable. In order to understand the points relied upon for a reversal, it will be necessary to relate some of the facts, and, as usual in such cases, we give that version of the affair most favorable to the state (except as may be specifically noticed); for the jury found for the state on all the material issues.

On the night of the homicide deceased, with another man and two women, were riding in a buggy near a settlement in Monroe county, known as Sharpend, and there met the defendant in the highway. Defendant said to deceased: "Wait; I want to speak to you." Instead of stopping, deceased, at the suggestion of one of his companions, drove on, and did not see the defendant again until all of the parties met later on the same evening at what is known as the Hooper home in the town of Buxton. It seems that there was some sort of a festival at this home which all the parties named were attending. With the deceased was one Emma Lewis, and when defendant saw her at the Hooper home he immediately stepped to where she was and said that he wanted to speak to her, and invited her outside the house. She refused to go out, and defendant then said, "You damn bitch, I am going to kill you." When the party broke up, the Lewis woman went with the deceased to the buggy, and as she was attempting to get in defendant started after her with a knife in his hand, and chased her around the vehicle once or twice; she finally escaping by going into the house. Deceased then said to defendant: "What is the matter, Coy (meaning Jackson)? What is the trouble, Coy?" This apparently angered defendant, for he said, in effect, "This is not your affair,"

and he immediately started after deceased, still holding his knife in his hand. Deceased struck at defendant with a buggy whip which he had in his hand, and warned defendant not to come any closer. According to some of the witnesses, deceased told defendant to stand back, as he had an automatic revolver. Notwithstanding the warning, defendant continued to advance, and deceased started to run in the direction of a nearby schoolhouse. Defendant followed him, and was apparently gaining on the deceased when the two passed out of view of the spectators. In the melee deceased was struck with a knife in the abdomen, making a wound from two to two and one-half inches long, and deep enough to penetrate and cut the lower bowels. From the wound so inflicted, deceased died within four or five days. To the sheriff who arrested the defendant, he (defendant) admitted that he had stabbed Bleakey, but he said that he did it in self-defense. Defendant's claim now is that if he struck the deceased with a knife at all, which, if true, he does not remember, that it was done near the Hooper house at the time when the deceased struck him with the whip, and, as he claims, threatened to shoot him with a revolver; and that he did not follow the deceased when he started to run toward the schoolhouse. He claims that when deceased struck him with the whip it hit his arm in which he held the knife and benumbed it, so that he does not know what became of the knife. There is no direct testimony as to what occurred after deceased attempted to escape; but, as defendant does not claim that he was compelled at that time to act in self-defense there is no necessity to indulge in any inferences favorable to defendant at that time. This outline sufficiently presents the main features of the case as made for the state. The points relied upon for a reversal will now be considered in order.

I. One of the trial jurors, after being sworn upon his *voir dire* without objection, was asked regarding his religious beliefs. He answered that he believed in a

Supreme Power, but that he did not believe in future re-
wards or punishments, had no personal fear
of future punishment, and did not believe
in either the Old or the New Testament. He was chal-
lenged for cause on account of the statements; but the
challenge was overruled. After all peremptory challenges
were exhausted, defendant's counsel moved for the dis-
charge of this juror, for the reason that he could not take
an oath which would be binding upon his conscience. This
motion was overruled, and the juror, without objection,
took the orthodox oath with all the other jurors. These
rulings were correct. The juror possessed all the statutory
qualifications, and was not subject to challenge for the
reasons assigned. He took the oath without objection, thus
evidencing the fact that he regarded it as binding upon
his conscience. Under modern rules, oaths are to be ad-
ministered to all persons according to their own opinions,
and as it most affects their consciences. *Gill v. Caldwell,*
1 Ill. 53. If the oath is taken without objection or protest
as to form, it will be assumed that the person taking it
regards it as binding upon his conscience, in the absence
of proof to the contrary. *State v. Gray,* 59 Minn. 6 (60
N. W. 676, 50 Am. Rep. 389). Under our law any per-
son otherwise competent may take an oath and act as a
juror, no matter what his religious belief is, provided, of
course, that such oath is in a form which the person
who takes it regards as binding upon his conscience. *Com-
monwealth v. Buzzell,* 16 Pick. (Mass.) 153.

*1. Jurors: qualifi-
cation: oaths.*

II. The state was permitted to use two witnesses
(doctors) who were not before the grand jury; nor were
their names indorsed upon the indictment. Notice was
given the defendant, however, of the state's
purpose to introduce these witnesses, and
this notice was served two days before the
case was reached for trial. This notice was
given under section 5373 of the Code, reading as follows:

*2. CRIMINAL LAW:
evidence:
admission
upon motion:
discretion:
prejudice.*

"Whenever the county attorney desires to introduce evidence to support the indictment, of which he shall not have given said four days' notice because of insufficient time therefor since he learned said evidence could be obtained, he may move the court for leave to introduce such evidence, giving the same particulars as in the former case, and showing diligence such as is required in a motion for a continuance, supported by affidavit, whereupon, if the court sustains said motion, the defendant shall elect whether said cause shall be continued on his motion, or the witness shall then testify; and if said defendant shall not elect to have said cause continued, the county attorney may examine said witness in the same manner and with the same effect as though four days' notice had been given defendant as hereinbefore provided, except the county attorney, in the examination of witnesses, shall be strictly confined to the matters set out in his motion."

The county attorney filed an affidavit under this statute, and the court permitted him to use the witnesses. This ruling is complained of because of the claim that the affidavit did not show sufficient diligence. This exact question was presented to the district court upon the affidavit of the county attorney and counter affidavits for defendant, and the court held the showing sufficient. In passing upon such motion a wise discretion is lodged in the trial court, and we do not interfere, in the absence of a showing of an abuse thereof. Defendant is fully protected by the provision allowing him to take a continuance; and, while he will not in all cases be held to waive an error in sustaining such a motion by failing to take a continuance, his election not to do so may be considered in determining whether or not he was prejudiced by the ruling on the motion. The witnesses testified simply as to the extent and nature of the wounds upon the deceased, and as to the cause of his death, and we are abundantly satisfied that no prejudice resulted in the ruling now questioned.

In this connection it is claimed that the witnesses were permitted to testify to matters not included in the notice given by the county attorney.   This is not a valid ground

3. SAME: evidence taken upon notice.

of objection.  *State v. Trusty,* 122 Iowa, 82; *State v. Boomer,* 103 Iowa, 115.   At any rate there was no such variance as would justify a reversal.

Complaint is made of the court's ruling refusing to strike some of the testimony of one of these witnesses, upon the ground that his conclusion was based upon hearsay testimony.  We have examined this complaint and find no merit in it.

Defendant complains that, without excuse, counsel for the state were permitted to put leading questions to various witnesses.  Here, again, the claim is without substantial merit.  In a few instances the objection might have been sustained; but no abuse of discretion is shown.  Some complaint is made of the redirect examination of the witness Emma Lewis.  By an amended abstract, which is not denied, the state has eliminated the question, showing that the matter was brought out by the defendant himself.

The cross examination of some of defendant's witnesses by counsel for the state is also complained of; but we find no prejudicial error therein.

Defendant produced two witnesses and offered to prove that just before the trouble began at the Hooper house they heard a conversation between deceased and Emma

4. SAME: evidence: threats.

Lewis concerning the relations between her and defendant, and of deceased's attitude toward the defendant.   The exact offer was as follows: "The defendant now offers to prove, for the purpose of showing the whole of the conversation which took place between Andrew Bleakey and Emma Lewis in the kitchen, or between the kitchen and the dining room, of this witness' (Mrs. Hooper's) house, at whose house the trouble occurred, on the night of July 22, 1911, in which Emma Lewis and

Andrew Bleakey had a conversation wherein Mr. Bleakey said to Emma Lewis to come on and go out with him to the buggy. 'I will take you out there. I am your protector. I will see that you are not hurt. I have as good an automatic as was ever fired, and I can use it, and will use it, if anybody bothers me. . . .' It is offered for the purpose of showing, or. as proof tending to show, that Andrew Bleakey was the aggressor at the time of the controversy between himself and this defendant on the night of July 22, 1911, and it is offered as a threat having been made towards the defendant; but defendant further states that no knowledge of this statement ever came to the defendant at any time before the controversy, resulting in the injury to Andrew Bleakey, between Bleakey and the defendant on that night."

The claim now made is that this testimony amounted to a showing of a threat against the defendant, and, although not communicated to him, was admissible for the purpose of showing who began the affray. Of course, recent uncommunicated threats against a defendant are admissible in cases where a question arises as to who was the aggressor in a difficulty between them, where defendant relies upon self-defense; and the question here is, Did defendant offer to show threats by the deceased? We do not think he did. The offer was not to show threats, but a promise to the Lewis woman of protection if any one should attack or bother them. This is something different from a threat, and at most it was a promise of protection, even to the extent of taking life, if necessary. Only by implication could it be said to be a threat, and if so considered it was a conditional one, indicative only of a promise to defend if attacked. The trial court did not err in excluding the testimony. Had the testimony been material, it might, perhaps, have been received as part of the *res gestae;* but we do not see how it would, in any manner, have strengthened defendant's case.

III.   After the testimony was all adduced, defendant's counsel asked the court to send the jury out to view the

5. SAME: view of premises: discretion.

premises; but this request was denied. In this there was no error of which defendant may complain. The ruling was wholly within the discretion of the trial court. Code, section 5380.

IV.   Complaint is made of an argument made by one of counsel for the state. We have examined such of the argument as is presented by the record, and find nothing

6. SAME: argument: misconduct.

therein of which defendant may justly complain. While, perhaps, a little colored, it was based upon what the testimony tended to show; and the trial court did not abuse its discretion in overruling the motion for a new trial based upon misconduct of the attorney. *State v. Johns,* 152 Iowa, 383; *State v. Thomas,* 135 Iowa, 717; *State v. McIntire,* 89 Iowa, 139.

Many of the instructions are challenged; but most of the complaints are hypercritical. The instructions are in the usual form in such cases, save for a very few matters,

7. SAME: evidence: admissions: instruction.

which we shall now consider. In referring to admissions, the court said: "(27) Evidence has been introduced to show the defendant made certain admissions appearing in evidence. Verbal statements or admissions should be received by you with great caution, as they are subject to much imperfection and mistake, owing to the person speaking not having clearly expressed his own meaning, or the person spoken to not having clearly understood the speaker. It frequently happens, also, that the witness, by unintentionally altering a few words or expressions really used, gives an effect to the statement entirely at variance with what the speaker actually did say. *But when such verbal statements are precisely given, and identified by intelligent and reliable witnesses, they are often entitled to great credit.*"

While not in the exact language of the books, the

italicized portion substantially presents the same thought, and there was no error here.    See *Marten v. Town of Algona,* 40 Iowa, 390; *Allen v. Kirk,* 81 Iowa, 670; *State v. Johnson,* 72 Iowa, 393; *State v. Jackson,* 103 Iowa, 702.

Counsel extract from an instruction on self-defense the following: *"There must, however, be actual, urgent danger. Not that the danger, in fact, should exist, but it must be actual and real to the comprehension of the person threatened as a reasonably cautious and prudent person.    In such cases the in-*quiry is, not whether the harm apprehended was *actually intended by the assailant, but was it actual and real to the party apprehending it as a reasonably cautious person?"* The parts italicized are criticised.    The first sentence, standing alone, would be erroneous; but, taken in connection with what follows, and with other instructions upon the same subject, it is perfectly manifest that the trial court did not say, nor would a jury understand, that the danger must, in fact, have been actual and urgent.    It was enough, according to the very instruction complained of, that it was actual and urgent to the comprehension of the party assaulted.    So considered, there was no error.    *State v. Jones,* 125 Iowa, 508; *State v. Collins,* 32 Iowa, 36; *State v. Fraunburg,* 40 Iowa, 555;    *State v. Donahoe,* 78 Iowa, 491, and *State v. Shelton,* 64 Iowa, 334, are not in conflict with the rules here announced.

8. SAME: self-defense: instruction.

Defendant asked the following instruction:    "(3) You are instructed that the defendant was lawfully at the home of Sylvester Hooper, in Buxton, on the night of July 22d, and the morning of July 23, 1911, and had a right to be upon Tenth street at the time in controversy between himself and Andrew Bleakey; and if you find from the evidence as produced on the witness stand that the said Andrew Bleakey made an assault upon the defendant at said time with a buggy whip, or otherwise, the defendant was not required, under the law, to

9. SAME: duty to retreat.

retreat, but had the right to stand his ground and resist such assault, meeting force with force, and only such a degree of force as appeared to him necessary as a reasonably careful, prudent, and cautious man, under all of the surrounding circumstances, to prevent the said Bleakey from continuing said assault, or from making any further assault upon the defendant."

This announced an incorrect proposition of law, and was properly refused. It is not true that one assaulted by another is not bound to retreat. He may stand his ground when, and only when, it reasonably appears that he could not retreat in safety. *State v. Goering,* 106 Iowa, 639. The correct rule was given by the trial court in its instructions Nos. 28, 29, and 30. An admonitory instruction, given by the trial court, is complained of. Such instructions have frequently been approved. *State v. Richardson,* 137 Iowa, 592, and many recent cases.

The testimony amply supports the verdict, and, finding no prejudicial error, the judgment must be, and it is— *Affirmed.*