STATE OF IOWA, Appellee, v. LEE CARR, Appellant.

**HOMICIDE:** Murder—Evidence—Sufficiency. Record reviewed, and
1  held ample to support the verdict of guilty of murder in the first degree.

**EVIDENCE:** Documentary—Plats and Photographs. Plats and photo-
2  tographs, when material, need not be excluded simply because their accuracy might be the subject of argument.

**CRIMINAL LAW:** Trial—View of Premises—Discretion of Court. The
3  trial court has a wide discretion in determining when a jury in a criminal cause may be permitted to view the scene of a crime.

Headnote 1: 30 C. J. p. 312. Headnote 2: 22 C. J. pp. 912 (Anno.), 921 (Anno.) Headnote 3: 16 C. J. p. 826.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

JUNE 25, 1925.

THE defendant appeals from a conviction of murder in the first degree and a judgment of imprisonment in the penitentiary for life.—*Affirmed.*

*Charles P. Howard,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Vernon R. Seeburger,* County Attorney, for appellee.

STEVENS, J.—I.　The crime charged was committed late in the afternoon of August 24, 1924, in the city of Des Moines. Appellant, as a witness in his own behalf, admitted that he shot and killed Allen Brooks at the time and place charged in the indictment, but claims to have done so in self-defense. One of the principal contentions urged in his behalf upon this appeal is that the verdict of murder in the first degree is not sustained by the evidence. There is much conflict and uncertainty in the evidence as to the incidents leading up to the shooting.

1. HOMICIDE: murder: evidence: sufficiency.

Allen Brooks, a colored man, resided, as did also appellant, in the vicinity of the crime. Brooks was unmarried, a paralytic, who walked with some difficulty, and a man of immoral habits. The testimony of all the witnesses is that a company consisting of men and women gathered at the home of Mrs. McCraven, on the afternoon of the day in question, perhaps for a chicken dinner; that Brooks came into the front room, from the rear of the house, where a witness for the State was playing the piano, and addressed some remarks to appellant, who was sitting near by.　Some of the witnesses testified that Brooks placed a gun at his stomach, and addressed him with vile epithets, inquiring if he had his gun, and saying that, if not, he had better get it, as he (Brooks) was going to kill him. None of the others present heard these threats or saw a gun in Brooks's hands.　The clear preponderance of the testimony is that he did not have a

gun at that time. Whether he left the room voluntarily, or was forced out, the testimony is in conflict. It is certain that whatever was said resulted in appellant's becoming angry and apparently determined to have it out with Brooks. He went home, secured his pistol, returned to the street with his gun in his hand, and had some words with Brooks. The record of appellant and his mother as to the language used by Brooks is too vile to be repeated. We estimate from the testimony that something like two hours passed between the time the quarrel began at McCraven's and the time of the shooting.

Brooks had a gun in his pocket at the time he received the fatal wound. He was shot with a .38-caliber gun, the bullet passing clear through his body. Appellant testified that he shot after he saw Brooks making an attempt to get his gun. Other witnesses testified that Brooks did not see appellant, and made no demonstration, and that the shot was fired from the rear. Brooks attempted to get his gun out of his pocket after the shooting, but was prevented by appellant, who jumped upon him, pounded him over the head with his pistol, and took the gun away from him. With his brother he then left the scene. They were apprehended the following morning, while in an attempt to flee from the city on a gravel train. Both were armed.

The questions of fact were, of course, for the jury; and while, as stated, the evidence is somewhat uncertain, it abundantly supports the verdict. All of the witnesses except the officers and some photographers who testified, are colored, and apparently somewhat ignorant. Nevertheless, they described what occurred as they saw it, with candor and an evident desire to tell the truth. The jury was fully warranted in believing, from the evidence, that appellant pursued deceased with the specific intent to kill him.

II. A plat of the surroundings and several photographs were admitted in evidence, over the objections of appellant. The objection most strongly urged is that the evidence does not show that they correctly represented the situation, or that they were properly identified. The objections were overruled, and we think properly so. It may be that the correctness of the plat in some particulars was a proper subject for argument, but nothing more.

2. EVIDENCE: documentary: plats and photographs.

III.   The defendant requested that the jury be permitted to view the premises.   To this the county attorney consented. There was considerable discussion between the court and coun-

3. CRIMINAL LAW: trial: view of premises: discretion of court. sel as to the purpose of appellant in having the jury view the situation.   The result of it was that appellant narrowed his request to particular matters as to which the testimony was in conflict.   After the court sustained the request and instructed the jury as to their duty in the matter, a further colloquy between counsel and the court ensued, which resulted in the refusal of the court to permit the jury to be taken to the scene of the shooting, which occurred upon a public street.

The trial court is clothed with a wide discretion in determining when the jury shall be permitted to view the scene where a crime is committed.   *State v. Jackson,* 156 Iowa 588. This is necessarily so, and we are persuaded that it was not abused in this instance.

Complaint is also made of rulings of the court on the admission and exclusion of testimony.   We have examined the record with the care the importance of the case demands, and are convinced that the rulings complained of were correct, or without possible prejudice to appellant.   We need not review them separately.   Some complaint is also made of the instructions; but, as they are not included in the record, we cannot consider the errors assigned thereon.   We find no reversible error in the record, and the judgment of the court below is—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur·