THE STATE v. PEFFERS.

1.   **Murder:** EVIDENCE: RES GESTÆ.   On a trial for murder it appeared that the deceased and one R. were sitting in front of a store, when defendant's wife passed, and made some remark which induced the deceased to follow her ; that he overtook and was walking with her, when defendant came up and engaged in an affray with deceased wherein the fatal stab was given.   R. was permitted to testify that after the woman had passed he asked deceased if he knew her, and he said he did not, but was going to see what she wanted,—would not go far, and would be back ; whereupon he followed her.   *Held* that this was properly admitted as a part of the res gestæ.   (See *State v. Cross,* 68 Iowa, 186.)

2.   ——: ——: CHARACTER OF DECEASED : SPECIAL ACTS.   In such case, defendant, having been permitted to show the general repu-tation of deceased as to being quarrelsome,evidence of particular facts, such as that he had been convicted of assault and battery, of intoxication, and of having used vulgar and profane language on the street in the presence of ladies, was properly excluded. (See *State v. Abarr,* 39 Iowa, 189 ; *State v. Abrams,* 2 Iowa, 576.)

3.   **Criminal Evidence:** IMPEACHMENT : PRIVILEGED COMMUNICA-TIONS.   Defendant's wife was arrested for the murder for which he was tried, and while under arrest she testified before the cor-oner's jury, but she did so freely, knowing that she had the right to decline to answer the questions put to her.   She was also a witness on the trial of her husband, when, for the purpose of impeachment, she was asked whether she did not testify to cer-tain facts before the coroner.   *Held* that the question was a proper one, and that the matter sought to be proved was not privileged. (See *State v. Teeler,* 69 Iowa, 719.)

4. **Murder:** DEFINING GRADES OF OFFENSE: PUNISHMENT. On a trial for murder the court defined murder of the first and second degrees, giving the punishment for each, and then defined manslaughter, adding, "and is punishable by imprisonment in the penitentiary not exceeding eight years," but omitting the other words of the statute, "and by fine not exceeding one thousand dollars." The jury found defendant guilty of murder in the second degree. *Held* that, since it was not the province of the jury to determine defendant's punishment for the crime of which they found him guilty, nor for any lower grade of offense, had they found him guilty of it, the omission was in no way prejudicial.

5. ———: SECOND DEGREE : EVIDENCE TO SUPPORT VERDICT. Although the evidence of a motive on the part of defendant in this case to injure the deceased, and of premeditation, is not strong, *held* that there was enough (see opinion) to sustain a verdict of guilty of manslaughter.

*Appeal from Marshall District Court.*—HON. S. M. WEAVER, Judge.

FILED, OCTOBER 8, 1890.

DEFENDANT was convicted of the crime of murder in the second degree, and was adjudged to be confined in the penitentiary at Ft. Madison at hard labor for the term of fifteen years, and to pay the costs of prosecution. From that judgment he appeals.

*J. L. Carney*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROBINSON, J.—In the evening of the twenty-fourth day of September, 1889, the defendant killed one John Cathers by stabbing him with a pocket-knife. A few minutes before that occurred the wife of the defendant passed deceased and one Rinard, as they were sitting in front of a drug store in Marshalltown. She made some remark, and conducted herself in such a manner that Cathers followed her. He overtook her within a short distance, and the two were walking together when the

defendant approached. Some words passed between him and Cathers; there was a brief struggle, and a knife wound was inflicted, which caused the death of Cathers within a few minutes. It is claimed, on the part of the defense, that Cathers followed the wife of defendant for the purpose of making indecent proposals to her; that he took hold of her person, and endeavored to force her to comply with his wishes; that she resisted, and when her husband approached informed him of the facts; that he was at once assaulted by Cathers, and, for the purpose of defending himself and wife, he resisted, and struck the fatal blow; that what he did was done in self-defense, without malice, and without premeditation, and that he could not in any event be convicted of a higher crime than manslaughter.

I. Rinard testified that when he and Cathers were sitting in front of the drug store Mrs. Peffers went by. When near them she slackened her speed, and said something which he understood to be, "What do you say?" at the same time

1. MURDER: evidence: res gestæ.

looking at them. They made no response, and she passed on, looking back once or twice as she walked. The witness was then permitted to testify, against the objections of defendant, that after the woman had passed he asked decedent if he knew her, and he said, "No," that he was going to see what she wanted. The witness further stated that Cathers told him that he would not go far, and would be back, and that he then followed the woman. We think the testimony was properly admitted as a part of the transaction which led to the killing of Cathers. It explained to some extent his reason for being with Mrs. Peffers when the affray occurred, and was so far a part of the *res gestæ* as to be competent. *State v. Cross*, 68 Iowa, 186. It may be, as claimed, that it would naturally be inferred from the remark of Cathers that he had been invited by Mrs. Peffers to follow her, but the jury had before them all the facts upon which the remark was based, and knew whether it was well founded.

II.   Defendant attempted to prove by the records of a justice of the peace and of the mayor of Marshall-town that deceased had been convicted of the crime of assault and battery, and of having been intoxicated, and of having used vulgar and profane language on the street in presence of ladies; but the offered evidence was rejected on the objection of the state.   We think the ruling was correct.   Defendant was permitted to show the general reputation of deceased as to being quarrelsome and inclined to fight, but proof of particular acts was properly rejected.   *State v. Abarr*, 39 Iowa, 189; *Forshee v. Abrams*, 2 Iowa, 576.

*2. —: —: character of deceased: special acts.*

III.   Mrs. Peffers was arrested for the murder of Cathers, and while under arrest testified before the coroner's jury.   She was also a witness for the defense in the court below, and on cross-examination was asked if she had not testified to certain matters before the coroner's jury.   The question was objected to by defendant, on the ground that she had the right to refuse to testify in regard to the crime with which she was charged, in any preliminary investigation respecting it, and that her statements made under oath under those circumstances were incompetent.   The record shows that she testified before the coroner freely, with knowledge that she had a right to decline to answer the questions put to her.   The question under consideration was asked to lay the foundation for impeaching her. We think the question was a proper one, and that the matter sought to be proven was not privileged.   See *State v. Teeter*, 69 Iowa, 719.

*3. CRIMINAL evidence: impeachment: privileged communications.*

IV.   The court in its charge to the jury defined the crimes of murder in the first and second degrees in the words of the statute, giving the punishment for each, and then described manslaughter as follows:   " Manslaughter is the unlawful killing of a human being without malice, express or implied, and is punishable by imprisonment in the

*4. MURDER: defining grades of offense: punishment.*

penitentiary not exceeding eight years." Appellant complains of the failure of the court to include in its description the fine of one thousand dollars, authorized by statute. If there is any good reason for stating in the charge the punishment authorized for a given offense, when the punishment is not to be fixed by the jury, our attention has not been called to it. When such punishment is given it should be stated accurately. It was not the province of the jury in this case to fix the punishment for the crime of which they found defendant guilty, nor for any lower crime had they found him guilty of that, and there was nothing in the charge from which they might infer that such was their duty. They certainly had no right to determine the crime from the authorized punishment, and we cannot presume that they did so. It is suggested by counsel that the failure of the court to fully state the punishment which might be inflicted for manslaughter may have induced the jury to agree to the verdict rendered, for the reason that, in their opinion, eight years' imprisonment would not be a sufficient punishment for the offense committed, although they in fact believed that it was only manslaughter. We do not think that such a conclusion can fairly be drawn when the entire record is considered, and are satisfied that the omission in question was without prejudice to defendant.

V. Appellant contends that the verdict is contrary to the evidence and the charge of the court. It is true that the evidence of a motive on the part of defendant to injure the decedent, and of premeditation, is not strong, but there was enough to sustain the verdict. There was much conflict in the .evidence as to several material issues, but the jury were authorized to find the following facts: The words and manner of Mrs. Peffers when she passed Cathers and Rinard, and immediately afterwards, might naturally be construed to be an invitation to follow her. When Cathers overtook her they walked together quietly without any attempt on his part to use

5. ——: second degree: evidence to support verdict.

force, and without resistance or remonstrance on her part. Defendant saw them together when he was some distance away, and followed them, at the same time uttering threats against Cathers. When he reached them he assaulted Cathers, and finally put an arm on or around one of his shoulders, and struck him with the knife, driving it into his heart. Defendant claims that Cathers made the first assault, and that he drew a razor, and was attempting to cut him with it, when he used the knife, but the jury were justified in finding that these claims were not true. The evidence satisfies us that defendant made the first assault, and that neither he nor his wife was in any danger from Cathers when the fatal wound was inflicted. It is true a razor was found on the body of Cathers after his death, but it was broken at the hinge, and was in his vest pocket, and closed. Evidence was given to the effect that Mrs. Peffers was a woman of bad moral character, and it is probable that the murder was prompted by jealousy. If the evidence on the part of the state was reliable, defendant formed the purpose of doing Cathers an injury some moments before he reached him. There was, therefore, sufficient premeditation to constitute the crime of murder in the second degree, for defendant must be held responsible for the result of a premeditated act. *State v. Decklotts*, 19 Iowa, 448.

VI. Counsel for appellant discusses numerous questions which we do not find it necessary or desirable to notice at length. We think the charge of the court was quite full and fair to defendant. It is not practicable for the court always to instruct in regard to every theory which may be advanced in the case, or suggested by the record. An attempt to do so in a complicated case might be as apt to mislead or confuse as to instruct the jury. We think the instructions in this case were all that were required, especially in the absence of requests to further instruct. We do not find prejudicial error in any of the rulings of the court, including its refusal to give certain instructions asked. Its judgment is, therefore,　　　　　　　　　　　　AFFIRMED.