### STATE OF IOWA v. JOHN BUFORD.

Examination of witnesses: LEADING QUESTIONS.  Where it appeared
1  from the answers of witnesses for the state that they were not
led by the method of examination, the defendant could not com-
plain that the questions were leading.

Criminal law: MURDER: SELF-DEFENSE: EVIDENCE.  Where the defend-
2  ant in a prosecution for murder offered evidence of the general
reputation of deceased for viciousness, and himself testified that
deceased had told him of killing a man some time previously, and
that other like difficulties with deceased had come to his knowledge,
the exclusion of the evidence of a witness that he had heard de-
ceased say that he had shot a man in the back, offered on the ques-
tion of self-defense, was not erroneous, in the absence of a show-
ing that such fact was brought to the knowledge of defendant.

Jurors: BIAS: KNOWLEDGE OF ACCUSED.  The defendant in a criminal
3  action cannot complain of the bias of a juror, where it is not shown
that he or his counsel did not know of the matters complained of
before the juror was sworn.

Murder: EVIDENCE.  The evidence on this prosecution for murder is re-
4  viewed and held to support conviction for murder in the second
degree.

*Appeal from Monroe District Court.*—HON. C. W. VERMIL-
LION, Judge.

TUESDAY, JANUARY 14, 1913.

DEFENDANT was indicted and convicted for murder of the
second degree for killing one Davenport, and was sentenced to
the penitentiary for a term of twelve years.  The defendant
appeals.—*Affirmed.*

*N. E. Kendall*, and *Woodson & Brown*, for appellant.

*Geo. Cosson*, Attorney-General, and *John Fletcher*, Assist-
ant Attorney-General, for the State.

PRESTON, J.—I. The first matter assigned by defendant as error is that, over defendant's objection, the court permitted the prosecuting attorney to ask the state's witnesses

**1. EXAMINATION OF WITNESSES: leading questions.** leading questions. There were not many of such questions all told, perhaps six or eight in the entire trial; some of these were on re-examination and explanatory of the testimony of the witness on cross-examination. We think the questions were not leading, and the answers show that the witnesses were not led. Defendant has no just cause of complaint as to this matter.

II. This question was put to the defendant's witness Reasby: "Q. Did you ever hear Davenport say he shot a

**2. CRIMINAL LAW: murder: self defense: evidence.** man in the back, who started to run while in a quarrel with him in Kentucky or Virginia?" This was objected to by the state, and the objection sustained. Defendant claimed the shooting of Davenport was in self-defense. The defendant's theory, as we understand it, is that this was admissible as tending to show the quarrelsome disposition of the deceased, and as bearing on the question as to who was the aggressor. The state contends that this question called for a specific act, which was too remote. There is no claim that this particular statement alleged to have been made by deceased to Reasby was communicated to the defendant. Defendant relies on *State v. Donahoe,* 78 Iowa, 486; *State v. Peffers,* 80 Iowa, 580; *State v. Beird,* 118 Iowa, 474. The *Donahoe* case does not directly pass upon this point, but refers almost entirely to the instructions. In so far as it does refer to this question, it is against defendant's contention. In the other two cases the statements of deceased were made a short time prior to the killing, and so closely connected with the transactions leading up to the act of killing as to have a bearing on his intention, disposition, and state of mind at the time the homicide was committed. They were a part of the *res gestæ.* It has been held that particular conduct of deceased, at a time remote

from the killing and not communicated to defendant, are not admissible, but that the quarrelsome disposition of deceased must be shown by his general reputation. *State v. Sale,* 119 Iowa, 1; *State v. Abarr,* 39 Iowa, 185.

It should be kept in mind that this evidence was offered for the purpose of showing the quarrelsome disposition of deceased as bearing on the question as to who was the aggressor. As we have said, there was no claim that this particular conversation was communicated to defendant prior to the homicide, and there was no offer to so show. It should be stated here that defendant did put six witnesses on the stand who testified to the general reputation of deceased for quarrelsomeness, and the state did not examine any witnesses to rebut this, so that.the jury had such testimony in a proper way to aid them in determining who was the aggressor. And further defendant testified, without objection, to a transaction very similar to the one asked of Reasby, except that it was claimed to have occurred in West Virginia. He testified as follows: "He [deceased] had told me how in West Virginia he had a rifle and told a man to 'run, you son of ———,' and the man turned and he shot him in the back,"—that this was the summer before he came to Iowa. Defendant also testified to other similar troubles which had come to his knowledge. This being so, defendant had evidence of this kind both ways; that is such matters to enable him to determine, as a reasonable person, the extent of his peril, by taking into consideration the violent character of his assailant as known to him, as well as evidence of the reputation of deceased for viciousness, to aid the jury in determining the question as to who was the aggressor at the time of the homicide. In view of the foregoing discussion as to the alleged vicious character of deceased, we ought to say that the evidence tends very strongly to show that, during the day of the homicide, defendant was the one who was quarrelsome, and that deceased was not. They had both been drinking together during the day. Defendant had been following deceased, making threats, and deceased more

than once told defendant to go away; that he did not want to have any trouble. The same rule here announced applies to the question put to Mrs. Zimmerman.

III. Defendant further complains because of alleged bias of one of the jurors who sat on the trial. He attached to his motion for a new trial an affidavit of 3. JURORS: bias: another person, setting out an alleged state-knowledge of accused. ment of such juror tending to show bias against the colored race. The state filed the affidavit of the juror in resistance, in which he denied making such statement. The affidavits seem to indicate that such statements were not seriously made, or taken by the hearer, if made. There is no showing by defendant and his counsel that they did not know of this matter before the juror was sworn. This is required. *State v. Bussamus,* 108 Iowa, 11. However, the juror in his affidavit states that he had no feeling or prejudice against defendant because of his color or the negro race; that he knew nothing about the case when called as a juror; that he gave defendant the same fair, impartial consideration he would have done if defendant was a white man; that he was not acquainted with defendant, and had no bias or prejudice against him. The juror was not disqualified. 24 Cyc. 281; *State v. Brown,* 188 Mo. 451 (87 S. W. 519).

IV. Lastly it is claimed that the verdict is contrary to the evidence; that the evidence shows that defendant acted in 4. MURDER: evi- lawful self-defense. It would serve no useful dence. purpose to review the evidence at length. It will suffice to say, briefly, that six eyewitnesses to the killing testified for the state, while for the defendant no one testified as to the transaction itself, except the defendant. Naturally their stories differ greatly. The evidence tends to show that deceased and defendant had been together during the day, drinking more or less, but up to a short time before the killing they had not appeared to be unfriendly. Deceased had a rifle, but was trying to get away from defendant, who was following from house to house, calling deceased a coward; at one

time defendant told deceased if he would put his gun down he would whip him; at another time, just before the blows were struck, defendant said to deceased if he would put his gun down he (defendant) would beat his brains out, and at that rushed in, grabbed the gun, and defendant either pushed or knocked deceased down, got the gun and struck deceased with it twice, perhaps three times, fracturing the skull in two places. Deceased had more than once requested defendant to go away, and told him he did not want any trouble. Defendant claims he was assaulted by deceased; that he had heard of his quarrelsome and dangerous character; had heard he carried a revolver, and claimed that he was acting within his rights in defending himself. The evidence was such that it was clearly a question for the jury. The verdict is amply supported in the evidence. We have referred in this opinion to all points argued. Defendant has had a fair trial, and we find no error in the record.—*Affirmed.*