STATE of Iowa, Appellee,

v.

Kandee JACOBY, Appellant.

No. 59756.

Supreme Court of Iowa.

Dec. 21, 1977.

Donna L. Paulsen, of Keyes & Crawford, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Jr., Asst. Atty. Gen., and Eugene J. Kopecky, County Atty., Cedar Rapids, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant Kandee Jacoby shot and killed her husband Douglas in their home in Cedar Rapids on January 3, 1976. She was charged with first-degree murder. A jury found her guilty of the included offense of manslaughter. Defendant was sentenced to serve an eight-year term in the Women's Reformatory and fined $1000. Upon her appeal, we remand for the purposes set out in division IX.

From this record the jury could have found the following facts. Defendant and Douglas were married January 3, 1970. In a short time the latter joined The Chosen Few, a motorcycle club which apparently earned its unsavory reputation. Although both defendant and Douglas seemed to enjoy many club activities, this organization also was a source of occasional violent quarrels, as well as defendant's lingering dissatisfaction with the couple's life-style.

Defendant and Douglas spent the evening of January 2, 1976, drinking at a local tavern. Douglas took defendant home shortly after 2:00 a.m. The latter went to bed, but Douglas proceeded to the club headquarters where he continued to drink and socialize with other members.

At approximately 6:00 a.m. Douglas returned home. He awoke defendant and confronted her with another woman's clubhouse comments that defendant no longer loved him and was using him for support while completing her college education. The couple went to bed, where the argument intensified.

Defendant left the bedroom through an interior door, declaring, "I can't take any more of this, I'm getting out." Douglas replied, "_____, you're never leaving this house again."

Defendant picked up a loaded revolver Douglas kept on a shelf and reentered the bedroom, which she had to cross to leave the house. She said, "Doug, lie down, let me out of here."

The gun discharged twice, fatally wounding Douglas. Defendant walked to the bed. Through what defense claimed was defend-

ant's involuntary movement, the gun again fired, inflicting an additional superficial wound.

Defendant called the Cedar Rapids police, initially reporting her husband had fired the shots, and later indicating she might have triggered the third one.

Other evidence will be referred to in the following divisions.

I. *Did trial court erroneously overrule defendant's pretrial motion to suppress her written statement to the police?*

Defendant's motion raised a voluntariness issue both as to waiver of her *Miranda* rights and as to a typed statement she signed at the police station shortly after the shooting. She contends emotional distress made her incapable of waiving her rights at the interrogation, the interrogating officers knew her husband was dead but failed to tell her despite her repeated inquiries, and they implied she could join him at the hospital if she cooperated at the police station.

■■■ Our controlling principles are well established. The State must prove by a preponderance of evidence a defendant's confession was voluntarily, knowingly and intelligently made. *State v. Winfrey,* 221 N.W.2d 269, 271 (Iowa 1974); *State v. Fetters,* 202 N.W.2d 84, 88 (Iowa 1972). The burden is heavy when defendant is not represented by counsel in a custodial interrogation. *State v. Swanson,* 228 N.W.2d 101, 104 (Iowa 1975). Review of a voluntariness question requires examination of the totality of circumstances shown by the pretrial hearing record. *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975); see *State v. Snethen,* 245 N.W.2d 308, 311 (Iowa 1976).

The evidence indicates defendant was distraught when the police arrived at her home. She attempted an overdose of pills. But after being taken to the police station defendant was more composed. She drank some coffee and smoked a cigarette.

Officer Millsap orally advised her of her *Miranda* rights and testified he asked her to read aloud a *Miranda*-waiving, standard-form document, which she did. Defendant

had no questions concerning this instrument and appeared calm and rational both before and after signing it.

After signing the waiver, defendant told Millsap her husband had shot himself. Millsap testified (without contradiction):

"I then talked with her regarding the situation and the facts that I felt were inconsistent with what she told us. * * * I told her at that point that I felt she needed an attorney, that she wasn't telling us the whole truth, and that I in fact thought she was responsible for her husband's death."

Defendant subsequently "stated that she hadn't done anything that she was worried about and she didn't feel she needed an attorney," and orally confessed to shooting her husband. About 25 minutes had elapsed from start of the interview.

Millsap dictated a statement in defendant's presence. This was typed by a secretary and, after making a few minor corrections, defendant signed it. This statement essentially disclosed the facts surrounding the incident as above set out.

Millsap testified he suspected but did not know Douglas was dead until after defendant acknowledged she fired the shots. Confirmation of the death was communicated to him before the statement was signed. From the totality of evidence we find defendant must also have known Douglas was gravely wounded, if not dead. Her knowledge of handguns was sufficient to shoot him twice in the head from a distance of several feet. Much of the large quantity of blood disclosed by the police photos must have been visible almost at once, for defendant had it on her hands and nightgown.

■■ In *State v. Cooper,* 217 N.W.2d 589 (Iowa 1974), we turned back a *Miranda* challenge to a confession obtained when an assistant county attorney lied to a defendant during an interrogation. Cooper had inquired about the condition of the woman he shot. The interrogator replied he did not know, although he knew she was deceased. We there stated deception of any nature by State agents cannot be condoned.

However, deception standing alone does not render a waiver of constitutional rights involuntary as a matter of law unless the deceiving acts amount to a deprivation of due process. It is a factor in reviewing the totality of circumstances in making the determination as to voluntariness of the waiver. *Id.*, 217 N.W.2d at 597; see *State v. Boren*, 224 N.W.2d 14, 16 (Iowa 1974), cert. den., 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975).

■ Applying these authorities to the case before us, we hold defendant was not deceived by police into waiving her rights. They practiced no substantial deceit relating to the gravity of Douglas' condition or the charges defendant might face. Nor does it appear the officers made any promises that defendant would be allowed to visit Douglas at the hospital if she cooperated with them at the station. Although she expressed her desire to go to the hospital, she must have known from the show of authority that she was in custody and not at liberty to leave the station.

■ Neither does defendant's emotional distress appear to have been so great in light of the totality of circumstances as to impair her capacity for self-determination or make her statements involuntary.

We hold trial court properly overruled defendant's suppression motion as it related to *Miranda* grounds.

■ We also hold defendant's waiver of her right to remain silent under the fifth amendment, United States Constitution, was voluntary. As bearing on this issue, see *State v. Snethen*, supra, 245 N.W.2d at 315; *State v. Winfrey*, supra, 221 N.W.2d at 273.

II. *Did trial court err in overruling defendant's motion for continuance?*

Defendant contends trial court deprived her of effective assistance of counsel by overruling two motions for continuance filed seven days and four days, respectively, before trial.

Our civil rules apply. § 780.2, The Code. Rule 183(a), Rules of Civil Procedure provides in relevant part:

"A continuance may be allowed for any cause not growing out of the fault or negligence of the applicant, which satisfies the court that substantial justice will be more nearly obtained. * * *"

■ The grant or refusal of a continuance lies within trial court's sound discretion. *State v. Youngbear*, 229 N.W.2d 728, 734 (Iowa 1975), cert. den., 423 U.S. 1018, 96 S.Ct. 455, 46 L.Ed.2d 390 (1975). On review we will not interfere unless there has been a clear abuse of discretion. *State v. Hines*, 225 N.W.2d 156, 160 (Iowa 1975).

■ A recital of the relevant circumstances surrounding these motions would add nothing to our jurisprudence. Although trial court would have been justified in granting either or both of the motions, defendant has not demonstrated overruling of these motions constituted a clear abuse of discretion.

We hold this assignment of error is without merit.

III. *Did trial court abuse its discretion in overruling defendant's motion in limine?*

Defendant argues trial court abused its discretion in overruling her motion in limine to require the State to make no mention and to introduce no photographs relating to the book "Helter Skelter," found on a couch in defendant's home.

Millsap testified without objection he discussed the book with defendant, who said she just finished reading it. In view of defendant's first statements that Douglas had shot himself, the State deemed it significant the book described a murder of a Manson "family member" in which the fatal gunshot wound was claimed to be self-inflicted.

A photograph of the book, lying on the couch where it was found, was allowed in evidence over defendant's objections it was incompetent, irrelevant and immaterial. But Millsap's testimony, outlined above, came in without objection. He was thoroughly cross-examined on this point.

Ordinarily reversible error cannot be predicated on an order overruling a motion in limine. *State v. Johnson,* 244 N.W.2d 809, 812 (Iowa 1976), and citations. Admission of evidence is not prejudicial error where substantially the same evidence is in the record without objection. *State v. Jurgenson,* 225 N.W.2d 310, 312–313 (Iowa 1975).

We find no ground for reversal in this respect.

IV. *Was defendant denied due process by release of jurors' identities?*

Defendant asserts she was denied the due process right to an impartial jury when the jurors' names were made public during trial, although trial judge had made a pretrial order and a subsequent more limited order forbidding photographs of jurors or disclosure of their names during trial of the case.

The circumstances surrounding the unfortunate orders are detailed in our prior decision, *Des Moines Register & Tribune v. Osmundson,* 248 N.W.2d 493 (Iowa 1976). May 11, 1976, we enjoined trial judge from enforcing his limited order restraining trial publicity. On the same day the jurors' names, addresses and telephone numbers were filed with the Linn County clerk of court as required by law. *Id.,* 248 N.W.2d at 501–502.

During trial defendant did not challenge release of jurors' names on due process or impartial jury grounds. Ordinarily matters not raised in trial court, including constitutional questions, may not be asserted effectively for the first time on appeal. *State v. Washington,* 257 N.W.2d 890, 895 (Iowa 1977); *State v. Pardock,* 215 N.W.2d 344, 347 (Iowa 1974).

There was no trial evidence adduced to show jurors might be exposed to danger during trial. *Des Moines Register & Tribune v. Osmundson,* supra, 248 N.W.2d at 500. Defendant made no trial or post-trial record showing any alleged prejudicial effect of the release of jurors' names following our above decision. She made no motion for mistrial or new trial. Nothing in the transcript indicates the jury was told before the verdict their names were released.

No prejudicial error appears in the record. We find no ground for reversal on this issue.

V. *Did trial court erroneously deny defendant's motions to produce prosecutor's notes relating to witness interviews?*

By cross-examination of several State witnesses, defendant sought to lay foundation for motions to produce notes taken by the assistant prosecutor when the latter interviewed the witnesses. Defendant relied on *Goldberg v. United States,* 425 U.S. 94, 98, 96 S.Ct. 1338, 1342, 47 L.Ed.2d 603, 611 (1976):

"[A] writing prepared by a Government lawyer relating to the subject matter of the testimony of a Government witness that has been 'signed or otherwise adopted or approved' by the Government witness is producible under the Jencks Act * * *."

For decisions adopting a similar procedure, see *State v. Mayhew,* 170 N.W.2d 608, 614 (Iowa 1969); *State v. White,* 260 Iowa 1000, 1007, 151 N.W.2d 552, 556 (1967).

In the case before us trial court overruled defendant's timely motions for production of the prosecutor's notes. Our examination of the transcript discloses that despite defendant's adroit efforts to lay a proper foundation to compel production, in each instance the witness did not sign or otherwise adopt or approve notes made during his or her interview. It is fair to assume the notes were merely the product of the prosecutor's selections, interpretations and interpolations. *State v. Houston,* 209 N.W.2d 42, 46 (Iowa 1973); *State v. Schlater,* 170 N.W.2d 601, 607 (Iowa 1969).

We, therefore, find no error in trial court's rulings.

VI. *Did trial court erroneously instruct the jury regarding the duty to retreat?*

There was no dispute defendant and Douglas were in their own home when the

shooting occurred. An issue of self-defense was inherent in the facts disclosed by the record.

Defendant timely objected that instruction 16 inadequately stated the law of self-defense, leading the jury to believe she had a duty to retreat to avoid an assault in her own home.

Instruction 16 was an effort to instruct the jury on the law of self-defense. It properly placed on the State the burden of proof to establish beyond a reasonable doubt that defendant was not acting in self-defense. *State v. Overstreet,* 243 N.W.2d 880, 884 (Iowa 1976). This instruction set out the four conditions which must be met to justify homicide, identified most recently in *State v. Beyer,* 258 N.W.2d 353, 356 (Iowa 1977) and *State v. Fisher,* 246 N.W.2d 918, 920–921 (Iowa 1976). Trial court's instruction stated the second condition as follows:

"2. The Defendant must retreat as set out later in this instruction."

Later in the instruction the following language appeared:

"One who is assaulted in their own home is not bound to avoid the conflict by retreating from the premises. They are bound to avoid the conflict if there is evidence available to them as a reasonable and prudent person that in any way, other than by retreating, it can be avoided. But one who is assaulted, or threatened with assault in their own home is not bound to retreat in order to avoid attack; but may, without retreating, repel force with force, even to the extent of taking the life of the attacker. The fact that the Defendant and Douglas Lee Jacoby were in their own home and each had equal rights there is immaterial."

This instruction obviously lacked a useful clarity in the situation disclosed by the evidence. It would have been more appropriate simply to tell the jury defendant was in her own home and had no duty to retreat. Instead of stating it was "immaterial" that both defendant and Douglas were in their own home and each had equal rights, trial court could have employed the language of

*State v. Leeper,* 199 Iowa 432, 442, 200 N.W. 732, 736 (1924):

"[T]he fact that the assailant is also an occupant of the home, with an equal right there, does not put upon the one assaulted any duty to retreat."

Nonetheless, in the instruction here under scrutiny, the general itemization of conditions justifying homicide imposed the duty to retreat only as "set out later in this instruction." Later in the instruction, the jury was told twice that a person in her own home was not obligated to retreat.

■■■■ We should avoid a minute, technical or hypocritical analysis. *Skalla v. Daeges,* 234 Iowa 1260, 1270, 15 N.W.2d 638, 643 (1944). An overview of the instruction in its entirety convinces us it was minimally adequate to advise the jury of defendant's right to stand her ground in her own home. We find no error requiring reversal on this issue.

VII. *Did trial court err in failing to give defendant's requested instruction relating to expert testimony?*

Defendant's psychiatrist witness Dr. Jenkins testified he had consultations with defendant on three occasions after her arrest. He expressed the opinion she was in a state of overpowering panic when she shot her husband and was incapable of deliberation or premeditation.

Defendant's requested instruction number one would have informed the jury this expert's testimony could be considered on the issue of her state of mind and whether she acted with premeditation, wilfully and deliberately. The instruction obviously was designed to assert the concept of diminished responsibility. See *State v. Gramenz,* 256 Iowa 134, 126 N.W.2d 285 (1964); I.S.B.A., Uniform Jury Instructions, No. 513.18 (Vol. II, Criminal).

Trial court refused to give the instruction. It did submit the uniform instruction on expert testimony, tailored to allow the jury merely to consider the testimony on "the state of mind of the Defendant at the time of the firing of the hand gun." See I.S.B.A., Uniform Jury Instructions, No. 1.9 (Vol. I, Civil).

Trial court is obligated to instruct fully on the law applicable to jury issues. See *State v. Templeton*, 258 N.W.2d 380, 382 (Iowa 1977); *State v. Ritchison*, 223 N.W.2d 207, 211 (Iowa 1974). Diminished responsibility is an appropriate defense in any crime which requires proof of a specific intent as an element, and if supported by the evidence, should be the subject of an appropriate instruction. See *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976).

Trial court's refusal to submit an instruction incorporating the concept of diminished responsibility was error. But of course this error does not mandate reversal unless it also was prejudicial.

Defendant was convicted of manslaughter only. Manslaughter is the unlawful killing of a human being without malice. *State v. Reese*, 259 N.W.2d 771, 778 (Iowa); *State v. Shipley*, 259 Iowa 952, 960, 146 N.W.2d 266, 271 (1966); *State v. Drosos*, 253 Iowa 1152, 1164, 114 N.W.2d 526, 533 (1962); *State v. Boston*, 233 Iowa 1249, 1255, 11 N.W.2d 407, 410 (1943). An express intent to kill is not a necessary element of manslaughter, a showing of reckless indifference to life and safety of another may be sufficient. *State v. Townsend*, 238 N.W.2d 351, 356 (Iowa 1976). Specific intent to kill is an element of first, but not second, degree murder. §§ 690.2, 690.3, The Code.

As defendant was not convicted of a specific intent crime, failure to instruct regarding expert testimony relating to her ability to form a specific intent could not have resulted in prejudice warranting reversal. See *State v. Mayhew*, supra, 170 N.W.2d at 618; *State v. Shipley*, supra, 259 Iowa at 959–960, 146 N.W.2d at 271; *State v. Jiles*, 258 Iowa 1324, 1338, 142 N.W.2d 451, 459 (1966).

VIII. *Did trial court err in failing to instruct the jury it could consider decedent's prior specific acts of violence on the issue whether he was the aggressor in the fatal encounter?*

Defendant introduced evidence of specific acts tending to show Douglas' turbulent, violent and quarrelsome character. Defendant had witnessed or knew about some of these acts. She had been involved in some of the other incidents. However, there was no proof she had prior knowledge of a gang rape of a young girl by Douglas and other members of The Chosen Few, or Douglas' assaults on his first wife. No effective objection was urged to the reception of this evidence.

Defendant took timely exception to trial court's failure to submit her requested instruction number three:

"Certain evidence has been admitted in this case of acts of violence and threats on the part of the deceased towards persons other than the Defendant. This evidence was admitted because you should consider it in determining the question of what the decedent probably did or was probably threatening to do at the time of the incident which is the subject of the charges made against the Defendant. You are further instructed that it makes no difference that the Defendant may not have known about these acts or threats of violence."

Defendant contends evidence of these specific acts was admissible as bearing on the issue who was the aggressor in the incident in which Douglas lost his life.

The State's brief asserts the statement of law is contained in another instruction and in any event the instruction unduly emphasized defendant's theory of the case. Neither of these arguments has merit.

We hold, however, trial court rightly rejected the requested instruction for a different reason.

The precise issue before us should be isolated and identified. We are not confronted here with an attempt to prove the bad general character of a witness for the purpose of testing his or her credibility. § 622.18, The Code; *State v. Alberts*, 241 Iowa 1000, 1001–1002, 43 N.W.2d 703, 705 (1950); *State v. Ferguson*, 222 Iowa 1148, 1159, 270 N.W. 874, 881 (1937). Nor does

this situation involve a defendant's attempt to prove his or her good character for the traits involved in an offense as bearing on the probability he or she did or did not commit the crime charged. *State v. Buckner,* 214 N.W.2d 164, 166–167 (Iowa 1974); *State v. Hobbs,* 172 N.W.2d 268, 271 (Iowa 1969); M. Ladd, Techniques and Theory of Character Testimony, 24 Iowa L.Rev. 498 (1939).

Rather, we are concerned with the character of the homicide victim. Here certain rules logically apply.

 All persons, independently of their character or reputation, are under the equal protection of the law. A homicide victim's prior violent or turbulent character or reputation is ordinarily immaterial and furnishes another no excuse to become his or her private executioner. Thus where the accused denies the killing or asserts it was unintentional, evidence of the deceased's character is inadmissible. 40 Am.Jur.2d, Homicide, § 301, pp. 568–569 (1968); Annot., Evidence—Self-Defense—Reputation, 1 A.L.R.3d 571, § 1, p. 574 (1965).

But an exception to this general rule applies where the accused asserts he or she acted in self-defense and the slightest supporting evidence is introduced. Then the violent, quarrelsome, dangerous or turbulent character of the deceased may be shown, both by evidence of his or her reputation in that respect and by witnesses who can testify from an actual knowledge of the victim's character. *State v. Wilson,* 236 Iowa 429, 442–443, 19 N.W.2d 232, 238 (1945); *State v. Rhone,* 223 Iowa 1221, 1232–1234, 275 N.W. 109, 115–116 (1937).

 This type evidence concerning the deceased's character is admissible for one or both of the following purposes:

(1) To show the state of mind of the defendant, the degree and nature of his or her apprehension of danger which might reasonably justify resort to more prompt and violent measures of self-preservation. *Rhone,* supra, 223 Iowa at 1232–1233, 275 N.W. at 115–116; *State v. Abarr,*

39 Iowa 185, 189 (1874); 40 Am. Jur.2d, Homicide, § 302 at 570. Of course such evidence is admissible for this purpose only if these character traits were known to the accused. *State v. Norton,* 227 Iowa 13, 16, 286 N.W. 476, 478 (1939); *State v. Sale,* 119 Iowa 1, 3, 92 N.W. 680, 681 (1902); 1 Wigmore on Evidence, § 63 at 470 (3d ed. 1940).

(2) As tending to prove who was the aggressor in the death-resulting encounter. Such evidence is admissible for this purpose even if these character traits were unknown to the accused. *State v. Wilson,* supra, 236 Iowa at 442–443, 19 N.W.2d at 238–239; *State v. Wilson,* 235 Iowa 538, 544, 17 N.W.2d 138, 142 (1945); *State v. Beird,* 118 Iowa 474, 478, 92 N.W. 694, 696 (1902); *Wigmore,* supra. This principle is similar to the rule admitting evidence of uncommunicated threats. *State v. Johnson,* 162 Iowa 597, 600–601, 144 N.W. 303, 305 (1913); *State v. Blee,* 133 Iowa 725, 733–735, 111 N.W. 19, 21–22 (1907).

In this case defendant's requested instruction three obviously was related to the second purpose identified above. But defendant's evidence on the issue was confined to specific acts, not traits of character, and her requested instruction was limited accordingly.

Thus the narrowed issue is whether the jury must be instructed that specific prior violent and quarrelsome acts of the victim may be considered in determining who was the aggressor in the fatal incident. Although we find no decision in point relating to instructions, a number of opinions relate to admissibility of such evidence. These cases are relevant, for if such evidence is inadmissible upon proper objection being raised, it seems obvious trial court was not required to submit an instruction articulating an asserted rule of Iowa law diametrically opposed to a principle which would have excluded the testimony on timely objection.

It is the rule in Iowa and the majority of jurisdictions that the quarrelsome, violent, aggressive or turbulent character of a homicide victim cannot be established by proof of specific acts. *State v. Badgett,* 167 N.W.2d 680, 686 (Iowa 1969); *State v. Norton,* supra, 227 Iowa at 16, 286 N.W. at 478; *State v. Wallack,* 193 Iowa 941, 943, 188 N.W. 131, 133 (1922); *State v. Buford,* 158 Iowa 173, 174–175, 139 N.W. 464, 465 (1913); *State v. Peffers,* 80 Iowa 580, 583, 46 N.W. 662, 663 (1890); *State v. Abarr,* supra, 39 Iowa at 189; *State v. Griffin,* 99 Ariz. 43, 47, 406 P.2d 397, 399 (1965); *Sanders v. State,* 245 Ark. 321, 324, 432 S.W.2d 467, 469 (1968); *People v. Flores,* 539 P.2d 1236, 1238 (Colo.1975); *Rolle v. State,* 314 So.2d 167, 168 (Fla.App.1975); *Henderson v. State,* 234 Ga. 827, 828, 218 S.E.2d 612, 614–615 (1975); *State v. Foreman,* 256 La. 999, 1010, 240 So.2d 736, 740 (1970); *State v. Conyers,* 58 N.J. 123, 133, 275 A.2d 721, 726 (1971); *Barger v. State,* 2 Md.App. 565, 568–569, 235 A.2d 751, 753 (1967); *State v. Matthews,* 301 Minn. 133, 134, 221 N.W.2d 563, 564 (1974); *McDonald v. State,* 218 So.2d 21, 23 (Miss.1969); *State v. Stewart,* 529 S.W.2d 182, 184 (Mo.App.1975); *Broz v. State,* 4 Tenn.Cr.App. 457, 463, 472 S.W.2d 907, 910 (1971), cert. den., 406 U.S. 949, 92 S.Ct. 2054, 32 L.Ed.2d 336 (1972); *State v. Walker,* 13 Wash.App. 545, 549–550, 536 P.2d 657, 662 (1975); 40 Am.Jur.2d, Homicide, § 306, p. 574; Annot., Self-Defense—Evidence—Admissibility, 121 A.L.R. 380, 382 (1939).

A minority rule permitting evidence of specific acts unknown to the defendant, to show the victim was the aggressor, has been applied in at least two federal circuits. *United States v. Burks,* 152 U.S.App.D.C. 284, 289, 470 F.2d 432, 437 (1972); *Evans v. United States,* 107 U.S.App.D.C. 324, 325–326, 277 F.2d 354, 356 (1960); *United States v. McIntire,* 461 F.2d 1092, 1093 (5th Cir. 1972). However, the new Federal Rules of Evidence indicate a shift to the majority rule where, as here, character is sought to be shown circumstantially. See 28 U.S. C.A., rule 404, and notes of advisory committee; rule 405, and notes of advisory committee. The minority rule prevails in Texas, *Lewis v. State,* 463 S.W.2d 186, 187–188 (Ct.Crim.App.1971); in Virginia, *Barnes v. Commonwealth,* 214 Va. 24, 25–26, 197 S.E.2d 189, 190 (1973); and in California following a 1967 change in its Evidence Code, *People v. Thomas,* 269 Cal.App.2d 327, 328, 74 Cal.Rptr. 617, 619 (1969).

"The reasons for the rule prohibiting proof of specific acts of violence appear to be at least threefold: (1) A single act may have been exceptional, unusual, and not characteristic and thus a specific act does not necessarily establish one's general character; (2) although the state is bound to foresee that the general character of the deceased may be put in issue, it cannot anticipate and prepare to rebut each and every specific act of violence; and (3) permitting proof of specific acts would multiply the issues, prolong the trial and confuse the jury." *Henderson v. State,* supra, 234 Ga. at 829, 218 S.E.2d at 615.

Proving a character trait by evidence of specific instances of conduct, while most convincing, "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." Notes of advisory committee on proposed rules, 28 U.S.C.A., rule 405, p. 148 (1975). A similar rationale foundations our rule that the character of a witness must be confined to the general reputation he or she sustained in the community, and not specific conduct or acts. "Such testimony raises collateral issues and diverts the minds of the jurors from the real issues." *State v. Johnson,* 219 N.W.2d 690, 695 (Iowa 1974).

We should not leave this area without noting, however, that specific acts to prove the victim's violent, dangerous, turbulent or quarrelsome character, even though unknown to the defendant, are admissible if so closely related to the fatal event as to constitute part of the *res gestae. State v. Beird,* supra, 118 Iowa at 479–480, 92 N.W. at 696; *State v. Hunter,* 118 Iowa 686, 692–693, 92 N.W. 872, 874 (1902).

It should also be observed:

"[A]ccording to most courts * * * if, prior to the homicide, the defendant,

either through his own observation or through information communicated to him by others, including the deceased himself, knew of other acts of violence of the deceased, he may, in support of his contention that he had reasonable grounds to believe himself in imminent danger from an assault by the deceased, introduce evidence of such prior unlawful acts of violence by the deceased." 40 Am.Jur.2d, Homicide, § 306 at 575.

See also *Wood v. State,* 486 S.W.2d 359, 362 (Tex.Crim.Ct.1972); *McMorris v. State,* 58 Wis.2d 144, 149–150, 205 N.W.2d 559, 563 (1973).

It may be argued these various rules on admissibility of such evidence are not entirely consistent. On the other hand, we are not inclined to change our rule at this time to accommodate defendant's requested instruction. As the Supreme Court has observed in considering the various principles involving proof of character, "[t]o pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice." *Michelson v. United States,* 335 U.S. 469, 486, 69 S.Ct. 213, 224, 93 L.Ed. 168, 179 (1948).

█ We hold defendant's requested instruction number three was rightly refused.

IX. *Did trial court erroneously overrule defendant's request for copies of police reports?*

Officer Millsap's testimony concerned his initial observations, and circumstances surrounding defendant's interrogation and resulting written statement. Upon cross-examination and redirect examination it developed one of his investigation reports, covering this phase of his work, had been submitted to the defense before trial.

Millsap testified he had made subsequent reports. When asked if these related "to your testimony here today or anything incorporated in your testimony?," he responded, "There would be some relation, I would suspect confirming a lot of it—testimony or statements that we got from Mrs. Jacoby."

Defendant requested copies of these reports for further cross-examination. Prosecutor's voir dire examination developed Millsap's later reports were "in regard to other people in the follow-up investigation that I talked to."

Trial court overruled defendant's request for these instruments. Upon further objections from defense counsel, trial court indicated he would "examine those reports to ascertain whether or not there is anything in those reports related to this testimony that we've just heard." Three days later, the court announced it had "made an in camera examination of the police reports and they reflect no exculpatory material which is not now known to the defendant's attorney."

Defendant asserts trial court's refusal to permit examination of these reports constitutes error.

█ While the record is unsatisfactory and the issue is close, we hold trial court should have examined the reports in camera, in the presence of the prosecutor and defense counsel, to determine whether any of the material was germane to Millsap's direct testimony. *State v. Houston,* supra, 209 N.W.2d at 46; *State v. Mayhew,* supra, 170 N.W.2d at 614; see *State v. White,* supra, 260 Iowa at 1010, 151 N.W.2d at 556. A finding by trial court, in isolation, that these reports contained no exculpatory information unknown to defense counsel does not satisfy this requirement. See *State v. Deanda,* 218 N.W.2d 649, 652 (Iowa 1974); *State v. Mayhew,* 183 N.W.2d 723, 725 (Iowa 1971).

█ We, therefore, remand this case to trial court for an in camera inspection of the above reports, to be made in the presence of the prosecutor and defense counsel. If the court finds the reports contain one or more relevant statements inconsistent with Millsap's material testimony on direct examination, and the statement is admissible for impeachment purposes, a new trial shall be ordered on a charge of manslaughter. See *State v. Sullivan,* 215 N.W.2d 491, 493 (Iowa 1974) and citations; § 777.20, The

Code; Iowa Constitution, art. I, § 12. If the court does not so find, the judgment already entered shall stand. In event of an adverse ruling on either of these necessary determinations defendant is granted the right of appeal, limited to that ruling. See *State v. Hall,* 235 N.W.2d 702, 731 (Iowa 1975); *State v. Mayhew,* supra, 170 N.W.2d at 614; *State v. White,* supra, 260 Iowa at 1010, 151 N.W.2d at 557; cf. *State v. Hall,* 249 N.W.2d 843, 845–847 (Iowa 1977); *State v. Thornburgh,* 220 N.W.2d 579, 586–587 (Iowa 1974). If defendant appeals, the reports in issue should be preserved and certified to this court. *State v. Houston,* supra, 209 N.W.2d at 46; *State v. Mayhew,* supra, 170 N.W.2d at 614.

REMANDED WITH DIRECTIONS.