**IN THE COURT OF APPEALS OF IOWA**

No. 18-0733
Filed December 18, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**FONTAE C. BUELOW,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi

Wittig, Judge.


        Defendant Fontae Buelow appeals his conviction of second-decree murder.

**REVERSED AND REMANDED.**


        Elisabeth A. Archer and David N. Fautsch of The Weinhardt Law Firm, Des

Moines, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.


        Heard by Bower, C.J., and May and Greer, JJ.

**MAY, Judge.**

This case centers on two people, Fontae Buelow and Samantha Link. One of them—either Buelow or Link—ended Link's life. Buelow maintains Link committed suicide. But a jury found Buelow guilty of Link's murder.[1]

Buelow appeals. We reverse and remand for a new trial.

## I. Facts and Prior Proceedings

Buelow and Link were in a romantic relationship. They stayed in the basement of a friend's home.

They were together on the evening of March 30, 2017. They began the evening at a local hotel to use the hot tub. Eventually, they met up with friends for drinks. But over the course of the evening, their relationship began to deteriorate. They argued and eventually went home. Their argument continued. Buelow wanted Link to leave the home. The two became physically combative.

They ended up in the kitchen. There were knives in the kitchen. Link suffered stab wounds to the chest. One wound went through her heart and another went completely through her lung. Buelow called 911 and requested assistance. He claimed Link stabbed herself. Emergency responders rendered aid to Link, but she was pronounced dead at the scene.

The State charged Buelow with first-degree murder. Early in the case, Buelow filed a motion for access to Link's medical records and mental-health records. Buelow argued the records may contain exculpatory evidence that would support his claim about the cause of Link's death. The court reviewed the records

---

[1] The jury found Buelow guilty of murder in the second degree. Buelow was also convicted of possession of cocaine. That conviction is not at issue in this appeal.

in camera and then made them available to the parties. Link's records showed prior suicide attempts, statements of suicidal intent, and diagnoses of serious mental-health disorders.

As the case proceeded, there was extensive litigation concerning the records. The issues included: what records could be disseminated to Buelow's experts; what opinions experts could offer at trial; and whether the records themselves, or their contents, could be admitted at trial. Buelow sought to admit Link's records from the past five years, during which Link had struggled with severe mental illness and attempted suicide at least twice. Buelow also wanted his psychiatric expert, Dr. David Bean, to review those records and present opinions about whether Link's mental-health history may have contributed to her death.

Ultimately, the court only permitted Dr. Bean to review Link's records from the year immediately preceding her death. But the court excluded the medical records themselves and most of their contents, including Link's prior suicide attempts. The court also substantially limited Dr. Bean's testimony. He was prohibited from offering opinions as to whether Link may have experienced increased "depressive symptomology," including potentially "suicidal activity," on the night of her death.

The matter proceeded to a jury trial. The jury found Buelow guilty of second-degree murder. Buelow now appeals.

## II. Discussion

Buelow claims that, because this was "a murder trial where the defense [was] that the decedent committed suicide," the district court erred by excluding medical records and expert testimony "tending to demonstrate the decedent's

suicidal disposition."[2]  *See, e.g.*, 41 C.J.S. *Homicide* § 332 (2019) ("Where the theory of the defense is that the deceased committed suicide, any evidence otherwise competent tending to show that the deceased came to his or her death by his or her own act is admissible.").

"[W]e generally review evidentiary rulings for an abuse of discretion."  *State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008) (citation omitted).  An abuse of discretion occurs when the district court excludes evidence based on an erroneous application of the law.  *Giza v. BNSF Ry. Co.*, 843 N.W.2d 713, 718 (Iowa 2014).

### A.  Grounds for exclusion

Several grounds for exclusion were noted by the district court, raised by the State on appeal, or both.  We address each in turn.

### 1.  Relevance

There is some debate as to whether the district court concluded Link's mental-health history was irrelevant.  Still Buelow concedes "there are statements in the record where the district court expresses concerns about the relevance of the evidence."  So we begin by considering relevance under Iowa Rule of Evidence 5.401.

Evidence is "relevant" if it has "any tendency" to make a fact at issue "more or less probable than it would be without the evidence."  Iowa R. Evid. 5.401.  Put another way, evidence is relevant if it could "throw any light upon the matter contested."  *State v. Knox*, 18 N.W.2d 716, 723 (Iowa 1945).

---

[2] Buelow raises several other issues as well.  Because we conclude the mental-health issue is dispositive, we do not reach Buelow's other contentions.

Link died for one of two reasons: Buelow killed her or Link killed herself. No one suggests there are other possibilities. So the case really turns on whether Link killed herself. Buelow sought to introduce evidence Link had previously attempted suicide at least twice and, moreover, Link had been diagnosed with disorders that increased her risk of committing suicide. Buelow's psychiatric expert would have explained that Link's mental instability, her intoxication on the night of her death, and her feelings of rejection following her argument with Buelow "could precipitate an increase in her depressive symptomology even to the potential of suicidal activity." We believe this kind of evidence could throw at least some light on whether Link ultimately completed suicide. *See id.*; *see also State v. Jaeger*, 973 P.2d 404, 407 (Utah 1999) ("It is reasonable to believe that a person who has attempted suicide in the past may attempt suicide again.").

But the State contends much of Buelow's proposed evidence—particularly, five years of Link's mental-health records—involves matters too far in the past to be relevant. Yet "[t]he time between the decedent's death and his or her actions or statements indicating, or relating to, suicide does not necessarily impact its admissibility." *State v. Stanley*, 37 P.3d 85, 90 (N.M. 2001) (reversing murder conviction and finding evidence of suicide attempts back to 1987 were relevant to 1998 death). And the State has pointed to no evidence, such a psychiatrist's opinion, to show "the elapsed time [was] so great as to negative all rational or logical connection" between Link's prior sufferings—including her multiple prior suicide attempts in 2014—and her alleged suicide in 2017. *See State v. Engeman*, 217 N.W.2d 638, 639 (Iowa 1974) (citation omitted); *see also Jaeger*, 973 P.2d at 406 (finding the district court erred in excluding on relevance grounds records from

1986 to 1987 showing decedent's admissions "she had attempted suicide in the past" where alleged murder occurred in 1990). So we decline to adopt the State's relevance theory.

### 2. Balancing under Rule 5.403

The State argues the district court excluded evidence of Link's mental-health history under Iowa Rule of Evidence 5.403. We disagree. Based on our review of the record, we cannot conclude the trial court performed the required balancing test to determine whether the "probative value" of Link's history "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Iowa R. Evid. 5.403.

But this "does not prevent us from upholding the district court's exclusion of the evidence." *Giza*, 843 N.W.2d at 724–25. It just requires us to perform the balancing ourselves. *Id.*; *see State v. Werts*, 677 N.W.2d 734, 737 (Iowa 2004).

We begin by considering the "probative value" of Link's mental-health history. *See* Iowa R. Evid. 5.403. As explained, Buelow's defense turns on whether Link committed suicide. The parties agree Link's suicidal thoughts and behaviors were connected to her mental health. It follows that Link's mental-health records, as well as the testimony by Buelow's psychiatric expert, would have probative value.

But is this probative value "substantially outweighed by a danger of . . . unfair prejudice" or the other policy concerns named in rule 5.403? Although the State claims the evidence would be "prejudicial," the State does not explain why. Nor does the State explain why the evidence would be "*unfairly* prejudicial," the

real issue under rule 5.403. Evidence can be "prejudicial"—it can undermine the State's case—without being unfair. *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158–59 (Iowa 2004) ("The adverse effect of relevant evidence due to its probative value is not unfair prejudice.").

In any event, we see no reason to conclude Link's mental-health history, or related expert opinions, would be "the type of evidence that has an unusual propensity to unfairly prejudice, inflame, or mislead the jury." *See Jaeger*, 973 P.2d at 406, 408 (holding treatment records "which contained [the deceased's] statements that she had attempted suicide on a previous occasion" should not be excluded under rule 403 of the Utah Rules of Evidence); *see also Stanley*, 37 P.3d at 91 ("The evidence that [the victim] suffered from mental illness and had attempted suicide in the past is not the type of evidence that has the unusual propensity to prejudice, confuse, inflame or mislead the fact finder.").

The State contends, however, that

[b]ecause mental illnesses, such as bipolar disorder or depression, produce a wide array of symptoms that vary per individual, allowing an expert witness to speculate about what symptoms a victim may have experienced at the time of death has the substantial likelihood of creating a mini-trial on the victim's mental health and would be properly excluded under Rule 5.403.

We disagree for two reasons.

First, we find no record support for the State's assumption that a psychiatrist could only "speculate" about Link's likelihood of suicide. Although the State cites

the DSM-IV-TR[3] and other sources, we respectfully decline to treat its brief as competent evidence on the boundaries of psychiatric inquiry.

Second, we acknowledge the prospect of "mini-trials" can present valid rule 5.403 concerns, such as confusion of the issues or a waste of time. These concerns arise when the admission of disputed evidence could open new inquiries into *peripheral* issues. For example, in a dispute over whether a car dealership properly repaired a customer's car, the district court might properly exclude complaints by *other* customers—and thereby avoid "mini-trials" about *those* customers and *their* cars. *Welsh v. Lithia Vaudm, Inc.*, No.18-0653, 2019 WL 1055853, at *1–2 (Iowa Ct. App. Mar. 9, 2019) (citing *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 616–17 (Iowa 2000)).

This is a different case. Buelow is charged with murdering Link. Buelow's only defense is suicide. Link's mental health is not a peripheral issue. It is central.

So neither Link's mental-health records, nor Dr. Bean's opinions about Link's risk of suicide, would introduce peripheral issues. They would not require "mini-trials." Instead, they would simply allow Buelow to present his full suicide defense to the jury. They should not be excluded under rule 5.403. *See Stanley*, 37 P.3d at 91 (holding "trial court abused its discretion in denying the admission of evidence relating to the decedent's suicidal tendencies" and noting "[d]efendant had a fundamental right to present evidence negating the State's evidence on causation and the fact finder should have been given the opportunity to consider

---

[3] The DSM-IV-TR is a diagnostic and statistical manual produced by the American Psychiatric Association.

such evidence and determine what weight, if any, to give to it in light of all other evidence").

### 3. Character evidence

The district court concluded some of the mental-health evidence was inadmissible character evidence. The court based this conclusion on *State v. Jacoby*, 260 N.W.2d 828, 837 (Iowa 1977). There, our supreme court stated:

> [W]here the accused denies the killing or asserts it was unintentional, evidence of the deceased's character is inadmissible.
> But an exception to this general rule applies where the accused asserts he or she acted in self-defense and the slightest supporting evidence is introduced. Then the violent, quarrelsome, dangerous or turbulent character of the deceased may be shown, both by evidence of his or her reputation in that respect and by witnesses who can testify from an actual knowledge of the victim's character.

*Jacoby*, 260 N.W.2d at 837 (citations omitted).

Because Buelow did not claim self-defense, the district court believed *Jacoby* required exclusion of evidence concerning Link's mental-health history, which the court categorized as character evidence.

On appeal, the State does not cite *Jacoby*. Indeed, based on the briefs and oral argument, it appears the parties agree mental-health disorders and their symptoms are not character evidence. In its brief, the State acknowledges "mental health illnesses do not fit neatly within the traditional framework of character evidence."

At the same time, the State does not abandon the notion that at least some of Link's mental-health history could constitute character evidence under rule 5.404. It appears no Iowa court has squarely addressed this issue. But we

are persuaded by the New Mexico Supreme Court's analysis of its analogous rule, 11-404, in *Stanley*. 37 P.3d at 92–93.

Donald Stanley was charged with murdering his roommate, Toby Peak, in 1998. *Id.* at 89. Stanley claimed Peek committed suicide. *See id.* Stanley offered evidence of Peek's extensive mental-health history, including suicide attempts going back to 1987. *Id.* The trial court excluded this evidence on several grounds. *Id.* at 90. The New Mexico Supreme Court reversed. *Id.* at 92. The court said this about the issue of character evidence:

> Although the trial court considered, but ultimately did not decide on, excluding the proffered suicide evidence under Rule 11–404, we address that issue to avoid confusion upon retrial regarding whether it is appropriate to categorize evidence of a decedent's suicidal tendencies as "character evidence." Rule 11–404(A) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." The evidence of prior suicide attempts is not appropriately analogized to prior bad acts which are inadmissible to show character, as provided for under Rule 11–404(B). Rather, the evidence here was of a serious, long-term mental illness treatable with medication and specific manifestations of that illness.
>    We hold that evidence of suicidal tendencies of a deceased should not be considered character evidence for purposes of Rule 11–404. Suicidal dispositions typically[4] stem from mental illness, not from a person's "bad character" or trait of character.

*Id.* (alteration and omission in original).

Likewise, under Iowa law, we conclude evidence of Link's mental-health history should not be considered character evidence. The district court erred in ruling otherwise.

---

[4] Like the *Stanley* court, we do not presume all suicides are products of mental illness. But here it seems undisputed that, if Link took her own life, her mental health played a role.

We have considered the State's suggestion that temporal proximity—closeness in time—determines whether mental-health evidence is character evidence. Under this theory, Link's mental-health history from just before her death is not character evidence. But her history from years prior is inadmissible character evidence. This is true, the State contends, because mental-health history from years prior—including Link's suicide attempts in 2014—can shed no light on her "state of mind on the night she died" in 2017.

We reject the State's view for two reasons. First, record evidence does not support the State's theory of Link's mind. No expert has opined that Link's prior mental-health history, including her prior suicide attempts, could give no insights about her thinking at the time of her death.

We note also that, in *Stanley*, the victim's mental-health evidence included events dating back to 1987, more than ten years before the victim's death in 1998. *See id.* at 89–92. Still the New Mexico Supreme Court concluded the character evidence rule did not apply. *Id.* at 92. The court reached that conclusion by applying a per se rule that "evidence of suicidal tendencies of a deceased should not be considered character evidence." *Id.* Timing did not enter the court's analysis. *See id.* We agree with this approach. We decline to hold that the passage of time is what separates character evidence from non-character evidence.

### 4. Hearsay

The district court concluded Link's mental-health records and their contents were inadmissible hearsay. Buelow contends this was error because (1) Link's statements concerning her feelings, her health, and her plans all fit within rule

5.803(3), the exception for "[t]hen existing mental, emotional, or physical condition"; (2) all of Link's statements to her mental-health care providers fit within rule 5.803(4), the exception for "[s]tatement[s] made for medical diagnosis or treatment"; and (3) in any event, the records as a whole fit within rule 5.803(6), the exception for "[r]ecords of regularly conducted activity."

The State offers no substantive resistance. In its brief, "[t]he State agrees the specific records at issue on appeal are not hearsay."

On this record, we cannot conclude the hearsay rule justified exclusion. *See, e.g.*, *Jaeger*, 973 P.2d at 409 (concluding a decedent's medical records containing out-of-court statements to psychologists and counselors concerning her prior suicide attempt were admissible under Utah rule 803(4)). The court erred in concluding otherwise. *See State v. Musser*, 721 N.W.2d 734, 751 (Iowa 2006) (noting hearsay challenges are reviewed for errors at law).

## B. Harmless error

The State contends that Buelow's conviction should be affirmed because exclusion of the mental-health evidence was harmless error. Buelow responds that evidence of Link's mental health is a vital part of his defense.

The improper exclusion of evidence does not require reversal unless a substantial right of a party is affected. Iowa R. Evid. 5.103(a). "In cases of nonconstitutional error, we start with the presumption that the substantial rights of the defendant have been affected." *State v. Dudley*, 856 N.W.2d 668, 678 (Iowa 2014) (citation omitted). "The State has the burden to affirmatively establish the substantial rights of the defendant were not affected." *Id.*

We acknowledge the State presented a formidable case, including detailed analysis by State Medical Examiner Dr. Dennis Klein, that suicide was inconsistent with the physical evidence.  But we cannot say the State's case was "overwhelming."  *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) ("[W]e consider a variety of circumstances in determining the existence of harmless error, including the existence of overwhelming evidence of guilt.").  Buelow responded with his own forensic pathologist, Dr. Bradley Randall.  He opined the circumstances were "more suggestive of" Link's death "being suicide than homicide."

We also acknowledge that, if Link's full mental-health history had been admitted, some parts would have been helpful to the State.  Link's most recent records suggested she had been doing well.

Yet, the last few years of Link's life were deeply troubled.  They included diagnoses of serious mental disorders, threats of suicide and, indeed, actual suicide attempts.  If permitted, Dr. Bean would have explained that the circumstances on the night of Link's death, including both her intoxication and her rejection by Buelow, could have precipitated "an increase in her depressive symptomology even to the potential of suicidal activity."  Evidence of this kind could have lent plausibility to Dr. Randall's analysis and, ultimately, to Buelow's explanation of how Link died.

In short, we believe the excluded evidence "would have clearly aided the defense in its only available theory," namely, that Link was responsible for her own death.  *See State v. Paredes*, 775 N.W.2d 554, 571 (Iowa 2009).  On this record, the State has not affirmatively established that the exclusion did not injuriously

affect Buelow's substantial rights.  *See State v. Beeson*, 136 N.W. 317, 320 (Iowa 1912) (describing a defendant's right to present evidence supporting claim that the alleged victim committed suicide as "a most important one").  We must, therefore, reverse Buelow's conviction for second-degree murder.  We remand to the district court.  We not reach Buelow's remaining arguments.

**REVERSED AND REMANDED.**